# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNIT PETROLEUM COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-CV-0105-CVE-TLW |
| ) | |
| WILLIAM A. VEITCH, KT CAPITAL ) | |
| CORP. f/k/a PETROHUNTER ENERGY, LTD.,) | |
| ASHLEY TUMLESON, previously named as ) | |
| Ashley Tumelson, STEVEN SIMONYI- ) | |
| GINDELE, and PETROHUNTER ) | |
| ENERGY, INC. ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Now before the Court are the Motion of William A. Veitch for Summary Judgment on the Issue of Ownership of Petrohunter Energy, Inc. and Related Properties and Brief in Support (Dkt. # 119) and KT Capital and Steven Simonyi-Gindele's Joint Motion and Brief for Partial Summary Judgment Adjudication Regarding Ownership of Petrohunter Energy, Inc. (Dkt. # 120). Unit Petroleum Company (Unit) filed this interpleader action because it has received competing claims to oil and gas revenues held for the benefit of Petrohunter Energy, Inc. (Petrohunter). There is a dispute among the defendants as to who owns Petrohunter and the Court ordered defendants to submit simultaneous briefs and responses concerning the ownership of Petrohunter. Dkt. # 115.

## I.

On February 25, 1981, Petrohunter was incorporated in Nevada and it subsequently filed a Certificate of Authority to conduct business in Oklahoma. Dkt. # 54-2; Dkt. # 54-3. The stock of Petrohunter was owned by Petrohunter Energy, Ltd. until August 26, 1986, when Petrohunter Energy, Ltd. changed its name to KT Capital Corp. (KT). Dkt. # 54-4, at 1; Dkt. # 54-8. KT was

incorporated under the laws of Alberta, Canada. Dkt. # 54-4, at 1. KT has been owned throughout its existence by Steven Simonyi-Gindele and his family, and Simonyi-Gindele has also served as the president, chairman of the board of directors, and chief executive officer of KT. Id. Ruth Simonyi-Gindele was appointed the secretary of KT in 1992. Id. Petrohunter's corporate charter became delinquent on April 1, 1985 and the state of Nevada permanently revoked the charter on December 1, 1990. In addition, Petrohunter's domestication and authorization to conduct business in Oklahoma lapsed in 1986.

Petrohunter owns an interest in several oil and gas leases in Oklahoma, and Unit operates some of those leases located in Latimer County, Oklahoma. Dkt. # 46, at 3. On July 12, 1985, Petrohunter filed bankruptcy proceedings in the United States District Court for the Western District of Oklahoma, seeking relief under Chapter 11 of the United States Bankruptcy Code. Dkt. # 119-2. The bankruptcy was converted to a Chapter 7 bankruptcy. Dkt. # 119-6, at 12. In its bankruptcy petition, Petrohunter listed the oil and gas interests operated by Unit as assets of the bankruptcy estate. Dkt. # 119-2, at 16-19. Win Holbrook was appointed the bankruptcy trustee, and Holbrook chose not to liquidate Petrohunter's interest in the oil and gas leases. Dkt. # 120-1, at 5. The bankruptcy case was closed in 1993 and Holbrook was discharged as trustee of the bankruptcy estate.[1] Dkt. # 119-7. Even though the bankruptcy case was closed, Unit continued to send all notices concerning the oil and gas leases to Holbrook. Dkt. # 120-2. In 2001 and 2005, the Oklahoma Corporation Commission entered pooling orders for the leases in which Petrohunter had

---

[1] The Court has reviewed the entire docket sheet of the bankruptcy proceedings (Dkt. # 119-6), and it does not appear that the trustee formally abandoned the property while the bankruptcy case was pending. The Court does not have a sufficient record to determine if Petrohunter's oil and gas interests operated by Unit were abandoned either specifically or by operation of law. However, this issue is irrelevant to the issue of who owns Petrohunter.

an interest.[2] Dkt. # 54-5. After the pooling orders were entered, Unit engaged in additional drilling and Petrohunter's revenues began to accumulate. Dkt. # 78, at 8. Unit contacted Holbrook in an attempt to communicate with Petrohunter about the accumulated revenues, but Holbrook advised Unit that the bankruptcy case was closed. Dkt. # 125-3, at 1. Unit continued to hold the accumulated revenue for the benefit of Petrohunter.

William A. Veitch was employed by Unit from 2004 to 2009. Dkt. # 78, at 15. In 2006, Unit assigned Veitch to research who was entitled to receive funds held for the benefit of Petrohunter, and Veitch was the Unit employee who spoke to Holbrook. Dkt. # 125-1, at 2. Veitch represented to Holbrook that Unit would be interested in purchasing Petrohunter's interests, and Holbrook advised Veitch that the bankruptcy proceedings would have to be reopened. Dkt. # 125-3. Holbrook believed that a buyer may have purchased Petrohunter's oil and gas interests as part of the bankruptcy proceedings, but he believed that the buyer failed to record the deed. Id. Unit was interested in purchasing Petrohunter's interests even though it knew that Petrohunter's interests were overproduced and that Petrohunter then had a negative balance. Id. Vietch states that Unit directed him to discontinue his investigation before he could determine who then owned Petrohunter's interests in oil and gas leases. Dkt. # 125-1, at 2. On May 28, 2009, Unit terminated Veitch's employment as part of a company-wide layoff. Id.

In January 2013, Veitch's attorney, Ben McGill contacted the registered agent of Petrohunter, Gene Howard, and McGill advised Howard that Veitch was interested in buying Petrohunter. Dkt. # 54-10. McGill stated that Vietch was "hoping that the company is no longer

---

[2] The parties dispute if any pooling orders were entered before 2001, but it is not necessary for the Court to resolve this factual dispute to determine the ownership of Petrohunter.

doing business and therefore of only nominal value to the shareholder(s). If so, my client is willing to pay $1,000 for the entity." Id. Howard responded that Petrohunter was active in the 1980s and that "Stephen Simone Gendell owned the stock." Id. at 2. Howard believed that Simonyi-Gindele "would be glad to assign the name to you if you can contact him." Id. McGill states that Veitch advised McGill to contact Howard about Petrohunter because Veitch was aware that Unit "at one time produced oil and gas revenues attributable to some oil and gas interests in Oklahoma that had been owned by Petrohunter," but Veitch did not advise McGill what the value of those revenues might be. Dkt. # 125-2, at 1-2. McGill also states that he was unaware of any pooling orders entered by the Oklahoma Corporation Commission concerning Petrohunter's oil and gas leases in Oklahoma. Id. at 2.

In March 2013, McGill called Simonyi-Gindele and they discussed Simonyi-Gindele's interests in Petrohunter and its parent entity. Id. at 4. McGill sent an e-mail to Howard and advised Howard of Simonyi-Gindele's belief that Petrohunter and its parent entity were "long defunct." Id. at 11. Veitch wanted to pay Simonyi-Gindele $1,000 for an assignment of Simonyi-Gindele's "right, title, and interest in and to those two entities with the hope that it will give him sufficient color of title to claim the name in the State of Oklahoma." Id. McGill asked Howard to contact Simonyi-Gindele to discuss Veitch's proposal because "[t]he deal is sufficiently off-the-wall that I think that he will be more likely to consider it if he has his own attorney explain it to him." Id. He also advised Howard that "there isn't enough money involved here to put a lot of time into it . . . ." Id. Howard responded that Simonyi-Gindele was "agreeable to signing a document as long as there is no indication that he presently has any right to the companies or the name" and Simonyi-Gindele wanted more information about his "exposure" if he were to assign his rights in Petrohunter

to Veitch. Id. McGill proposed to draft an assignment stating that the "Assignor owns or controls whatever residual rights remained in Petrohunter Energy, Ltd. after it ceased to do business, and those rights include that company's interest in Petrohunter Energy, Inc., its wholly owned subsidiary." Id. at 10. Howard responded that Simonyi-Gindele was "very cautious about litigation" and he was reluctant to claim an interest in a "defunct entity" if it would subject him to litigation. Id. Simonyi-Gindele refused to sign an assignment and he did not receive any payment from Veitch. Dkt. # 55-1, at 4. During e-mails and conversations on March 21 and 22, 2013, McGill did not disclose that any pooling orders had been entered by the Oklahoma Corporation Commission or that Unit was holding funds in suspense, but McGill claims that he had no personal knowledge of the pooling orders or the funds being held for Petrohunter. Dkt. # 125-2, at 1-2.

McGill claims that he had a telephone conversation with Simonyi-Gindele on March 25, 2013, and McGill states that Simonyi-Gindele claimed that Petrohunter had been abandoned by its owner, Petrohunter Energy, Ltd. Id. at 2. Simonyi-Gindele allegedly stated that ownership of Petrohunter could be claimed by a "finder," and he also claimed that Petrohunter Energy, Ltd. had been abandoned by its shareholders. Id. McGill states that Simonyi-Gindele "told me that neither he nor anyone he knew owned an interest in [Petrohunter], Petrohunter Energy, Ltd., nor any entity claiming an interest in either of those companies . . . [and] that he was not an officer, director nor shareholder in either of these companies." Id. at. 3.

On May 5, 2013, Veitch held a shareholder meeting for Petrohunter and declared himself the sole shareholder of Petrohunter. Dkt. # 119-20. As the sole shareholder, Veitch elected himself as vice-president, secretary, and treasurer, and he elected his wife, Ashley Tumleson, to serve as president and chief executive officer of Petrohunter. Veitch and Tumleson were authorized to "take

5

such actions as may be necessary for the Secretary of State of Nevada to revive [Petrohunter] and for the Secretary of State of Oklahoma to return the corporation to Good Standing in the State of Oklahoma." Dkt. # 119-21. Veitch did not give notice of the alleged shareholder meeting to Simonyi-Gindele or KT. On May 15, 2013, Tumleson filed Oklahoma franchise tax returns for the years of 1988 to 2011 on behalf of Petrohunter. Dkt. # 124-5. Tumleson also filed Oklahoma annual business activity tax returns for the years of 2010 and 2011, representing that Petrohunter was an Oklahoma corporation. Dkt. # 124-6. On June 19, 2013, Tumleson sent a letter to Unit demanding that Unit provide an accounting of all funds held in suspense for Petrohunter and that Unit send all funds to Petrohunter at the Tulsa address listed on the letter. Dkt. # 119-25. The letter specifically referenced wells located in Latimer County, Oklahoma. Id. In her letter to Unit, Tumleson did not use her married name of Ashley Tumleson Vietch, even though she used her married name on other legal documents, and she did not disclose that Veitch was formerly an employee of Unit. Dkt. # 126-4.

Beginning in July 2013, McGill began communicating with counsel for Unit about the payment of funds to his client, Veitch. Dkt. # 119-10. In August 2013, Unit notified Simonyi-Gindele that a third-party claimed to be the owner of Petrohunter and that the third-party was attempting to collect oil and gas revenues held for the benefit of Petrohunter. Dkt. # 54-4. On September 30, 2013, Veitch filed a certificate of revival with the Nevada Secretary of State seeking to revive Petrohunter's corporate charter as of June 1, 2013. Dkt. # 119-33. On October 1, 2013, Veitch convened a meeting of the board of directors of Petrohunter, led by himself as the sole director of Petrohunter, and he authorized Petrohunter to retain the services of attorney John Howland for the purpose of recovering oil and gas revenues held by Unit. Dkt. # 119-22. Unit filed

a motion to reopen Petrohunter's bankruptcy on the ground that it had held funds for the benefit of Petrohunter and the funds could be used to pay Petrohunter's creditors. Dkt. # 119-36. Veitch, claiming to represent Petrohunter, filed a response to the motion to reopen the bankruptcy, and asked the bankruptcy court to determine who owned Petrohunter and its assets. Dkt. # 119-37. Veitch also asked for relief from the automatic stay and he requested a hearing before the bankruptcy court. Dkt. # 119-38. Simonyi-Gindele filed a response to the motions, and asked the bankruptcy court to allow the issue of the ownership of Petrohunter to be resolved in a separate proceeding. Dkt. # 119-41. The bankruptcy court denied Unit's motion to reopen the bankruptcy proceedings.[3] Dkt. # 78, at 33.

On March 7, 2014, Unit filed this interpleader action seeking leave to deposit the disputed oil and gas proceeds with the Court, and Unit asked the Court to resolve the competing claims to the funds. Dkt. # 2. Veitch made a claim to the funds in his own capacity and as a representative of Petrohunter, because he claimed that he obtained ownership of Petrohunter due to Simonyi-Gindele's abandonment of Petrohunter. Dkt. # 17. Tumleson did not make a claim to the funds and she asked to be dismissed from the case. Dkt. # 23. Simonyi-Gindele and KT submitted a claim for the disputed funds and they also alleged state law tort claims against Veitch and Tumleson. Dkt. # 36. On May 8, 2014, the Court held a scheduling conference because the parties could not agree how to proceed with discovery and there were numerous pending motions to dismiss. See Dkt. ##

---

[3] Counsel for Unit has represented that there is possibly still an open issue as to whether Petrohunter's oil and gas interests and proceeds that are the subject of this interpleader action are subject to bankruptcy court jurisdiction. Dkt. # 78, at 33. The Court does not have a sufficient record to determine what, if any, action the bankruptcy judge took concerning the oil and gas interests, and this Opinion and Order is limited to determining the ownership of Petrohunter itself. If there is any issue as to reopening the bankruptcy proceeding, that is an issue that the appropriate parties will need to raise before the bankruptcy court.

7

64, 75. The Court entered a bifurcated scheduling order under which the parties would initially conduct discovery as to the amount of oil and gas proceeds and possibly statutory interest to be deposited by Unit. Dkt. # 75. The Court stayed discovery as to the ownership of Petrohunter and set a second scheduling conference following the completion of the initial phase of discovery. Id.

After this case was filed by Unit, Veitch submitted a claim to the Treasurer of Oklahoma for over $10,000 of oil and gas proceeds owed to Petrohunter being held by the state of Oklahoma. The Treasurer sent a check to Petrohunter at Veitch's address in Tulsa. Dkt. # 120-5. Veitch did not notify the other parties or the Court that he had received funds from the state treasurer on behalf of Petrohunter, even though he knew that Simonyi-Gindele claimed to be the owner of Petrohunter. Simonyi-Gindele's attorney, R. Jack Freeman, learned that Veitch had claimed funds on behalf of Petrohunter, and Freeman asked Veitch's attorney, John Howland, for additional information about this issue. Dkt. # 120-6, at 3-4. Freeman further stated that he would seek assistance from the Court if Howland did not voluntarily produce this information. Id. Howland responded that he would provide additional information about the funds recovered from the state of Oklahoma, but Howland questioned why Freeman would "wish to insert irrelevant information into the record or trouble the court with it." Id. at 3.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

8

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Simonyi-Gindele and/or KT and Vietch claim ownership of Petrohunter and the oil and gas revenue being held in suspension for the benefit of Petrohunter. Simonyi-Gindele argues that he is the rightful owner of KT and its subsidiary Petrohunter, and he denies that he expressly or impliedly abandoned his ownership interest in Petrohunter. Vietch claims that Simonyi-Gindele told McGill that he had no interest in or claim to Petrohunter, and Veitch argues that Simonyi-Gindele abandoned his right to recover the oil and gas revenue held by Unit.

9

## A.

Veitch's arguments are based on the assumption that common law principles of abandonment are applicable to the parties' dispute. There is little or no case law in Oklahoma concerning common law abandonment of property, but the decisions of other state courts are generally consistent as to the requirements to prove abandonment. Under common law, abandonment is the "voluntary and intentional renunciation of ownership" of property. Prue v. Royer, 67 A.3d 895, 908 (Vt. 2013). "A finding of abandonment depends upon the intentions of the parties and is not predicated on any single factor, but on all of the facts and circumstances concerning the owner's relationship with the subject property and the seller." Id. (quoting In re Berman, 247 N.W.2d 405, 408 (Minn. 1976)). Abandonment requires "both the intention to abandon and the external act by which the intention is carried into effect." Osborn v. Anadarko Petroleum Corp., 996 P.2d 9, 12 (Wyo. 2000) (quoting Phillips v. Hamilton, 95 P. 846, 848 (Wyo. 1908)).

As the Court has noted, there is little or no Oklahoma case law concerning common law abandonment, but that is likely because Oklahoma has adopted the Uniform Unclaimed Property Act and this statutory scheme governs the distribution of unclaimed or abandoned property in Oklahoma. See OKLA. STAT. tit. 60, § 651 et seq. (Unclaimed Property Act). The Unclaimed Property Act expressly applies to "intangible property," including "stocks and other intangible ownership interests in business associations . . . ." OKLA. STAT. tit. 60, § 651.9(c). Stock or other intangible evidence of ownership of a business is presumed unclaimed three years after the earliest of:

a. The date of the most recent dividend, stock split, or other distribution unclaimed by the apparent owner, or

b. The date a statement of account or other notification or communication was returned as undeliverable.

OKLA. STAT. tit. 60, § 655. Intangible property is deemed abandoned as a matter of law if the last known address of the owner is unknown and "[t]he person or entity originating or issuing the intangible property is in this state or any political subdivision of this state, or is incorporated, organized, created or otherwise located in this state." OKLA. STAT. tit. 60, § 657.4.A. If property is abandoned and a person holding the property seeks to claim it, that person must file a report with the Treasurer of the State of Oklahoma in compliance with OKLA. STAT. tit. 60, § 661. A "holder" of property means "a person, wherever domiciled, who is . . . in possession of property belonging to another . . . ." OKLA. STAT. tit. 60, § 651. At least 120 days before filing a report with the Treasurer, the holder of the property must send written notice to the apparent owner. Id. Once a report is filed, the state treasurer is required to publish notice in a manner designed to reach the apparent owner or his or her heirs. OKLA. STAT. tit. 60, § 662. Any person seeking to recover property held by the state treasurer must file a claim, and the state treasurer must rule on the claim in writing within 90 days from the date the claim was received. OKLA. STAT. tit. 60, § 674. In addition to the Unclaimed Property Act, Oklahoma has also adopted the Unclaimed Pooled Monies Act, OKLA. STAT. tit. 52, § 551 et seq. (UPMA). The Oklahoma courts have applied the Unclaimed Property Act and the UPMA in determining the recipient of allegedly abandoned oil and gas revenues. Phillips Petroleum Co. v. Oklahoma Tax Comm'n, 876 P.2d 719 (1993); TXO Prod. Corp. v. Oklahoma Corp. Comm'n, 829 P.2d 964 (Okla. 1992).

Nevada has also adopted the Uniform Unclaimed Property Act. Instead of having a separate provision to define tangible and intangible property, the Nevada version of the uniform act has a single section entitled "Property' defined." NEV. REV. STAT. § 120A.113. Section 120A.113 states that "Property" includes "certain interest in intangible property that is held, issued or owed in the

course of a holder's business," and "Stock or other evidence of ownership of an interest in a business association or financial organization" is "property" under Nevada's unclaimed property act. Stock or equity interest in a business association is presumed to be abandoned "3 years after the earlier of the most recent dividend, stock split or other distribution unclaimed by the apparent owner, or the date of the second mailing of a statement of account or other notification or communication that was returned as undeliverable . . . ." NEV. REV. STAT. § 120A.500(1)(c). Nevada also has a requirement that a holder file a report with the state treasurer and that the holder send written notice to the apparent owner of the property. NEV. REV. STAT. § 120A.560. Upon filing a report, the holder is required to deliver the property to the state treasurer. NEV. REV. STAT. § 120A.570. The state treasurer publishes notice of receipt of the unclaimed property in a manner that "is likely to attract the attention of the apparent owner." NEV. REV. STAT. § 120A.580. Any person seeking to recover abandoned property held by the state treasurer must file an administrative claim and the state treasurer will determine ownership of the abandoned property. NEV. REV. STAT. § 120A.640.

In states that have adopted the Uniform Unclaimed Property Act, "persons who are in possession of abandoned tangible and intangible personal property belonging to another [must] timely remit the property to the state Treasurer" and the state assumes custody of abandoned or unclaimed property with the purpose of seeking out the rightful owner. Alvarez v. Pappas, 890 N.E. 2d 434, 440 (Ill. 2008). The purpose of the statute is for the state, not the holder, to maintain possession of unclaimed or abandoned property for the purpose of reuniting the owner with his or her property. Smyth v. Carter, 845 N.E. 2d 219, 223 (Ind. App. 2006); Commonwealth Edison Co. v. Vega, 174 F.3d 870, 872 (7th Cir. 1999). Unlike the principle of common law abandonment, which allows a finder to claim possession of abandoned property, the Uniform Unclaimed Property

12

Act essentially converts unclaimed or abandoned property into an interest free loan to the state should be there be any benefit to possessing the property, and the loan lasts indefinitely until the true owner of the property can be found. Commonwealth Edison Co., 174 F.3 at 872. Before attempting to assert ownership over property, a holder of unclaimed or abandoned property must taking certain steps before simply claiming possession of the property. Benson v. Simon Property Group, Inc., 642 S.E. 2d 687, 690 (Ga. 2007). The Uniform Unclaimed Property Act is designed so that unclaimed property is held by and for the benefit of the state until the rightful owner can be found, and it is intended to prevent a windfall to a private holder seeking to claim property for himself. Combs v. B.A.R.D. Indus. Inc., 299 S.W.3d 463, 471-72 (Tex. Ct. App. 2009).

In this case, Veitch alleges that Simonyi-Gindele and/or KT abandoned any interest they had in Petrohunter, and Veitch argues that he had the right to claim the abandoned stock or ownership interest under common law. However, there is no evidence that Veitch complied with the unclaimed property laws of Oklahoma or Nevada when seeking to assert his ownership over Petrohunter.[4] The evidence shows that Veitch had his attorney, McGill, contact Simonyi-Gindele's attorney, Howard, in January 2013, and McGill stated that his client wanted "to own the name Petrohunter Energy, Inc." Dkt. # 54-10, at 2. McGill wanted to know if the company was still operating and if the owners of Petrohunter would consider selling the business to McGill's client. Id. Nothing came of McGill's initial inquiries and McGill renewed his contact with Howard in March 2013. McGill did not disclose why his client wanted to own the name of Petrohunter or that Unit was holding oil and gas proceeds for the benefit of Petrohunter. McGill states that he later spoke directly to Simonyi-

---

[4] Veitch cites the Unclaimed Property Act and acknowledges that a state can take control over an asset to ensure that the proper party is given notice of possible abandonment of an asset. Dkt. # 119, at 20.

13

Gindele and he claims that Simonyi-Gindele expressly abandoned any interest he might have had in Petrohunter. Dkt. # 125-2, at 2. Simonyi-Gindele disputes that he abandoned KT's interest in Petrohunter or Petrohunter's mineral interests. Dkt. # 126-1, at 2. Even if he had, this would not relieve Veitch of his obligation to comply with the unclaimed property laws of Oklahoma or Nevada. Veitch simply claimed ownership of Petrohunter without any additional notice to Simonyi-Gindele and he did not file a report with the state treasurer of Oklahoma or Nevada. Veitch cites no authority that common law abandonment allows a person to claim ownership of property in a state that has adopted the Uniform Unclaimed Property Act. In addition, the Oklahoma Supreme Court has construed the Unclaimed Property Act and the UPMA together to "express a public policy that the State will protect undistributed proceeds from forced pooled mineral interests for their rightful owners." Crosling v. Enerlex, Inc, 308 P.3d 1041, 1051-52 (Okla. 2013). The Court finds that Veitch could not claim an ownership interest in Petrohunter under a theory of common law abandonment. If Veitch believed that the property was abandoned, he was required to comply with the applicable unclaimed property laws and file a claim with the state treasurer in order to legitimately claim ownership of Petrohunter. Veitch failed to follow statutory procedures for claiming possession of unclaimed property, and he cannot be found to be the owner of Petrohunter under the unclaimed property laws of Oklahoma or Nevada.

Even if the Court were to disregard the statutory unclaimed property laws of Nevada or Oklahoma, the Court would not find that Simonyi-Gindele or KT knowingly and voluntarily abandoned Petrohunter. The Court initially notes that Simonyi-Gindele and KT have made a claim to the funds in this case, and this is strong evidence that Simonyi-Gindele and KT have not abandoned Petrohunter. In the context of unclaimed mineral interests, a person seeking to purchase

14

those mineral interests from the apparent owner has an affirmative duty to disclose the existence of any pooling orders and the full value of the mineral interests. Widner v. Enerlex, Inc., 313 P.3d 930, 933-34 (Okla. 2013). Veitch denies that he or McGill knew of the pooling orders or the full amount of oil and gas proceeds held for Petrohunter, but this does not relieve Veitch or his attorney from their obligation to make truthful representations to the actual owner of mineral interests when seeking to purchase or claim as abandoned certain mineral interests. Veitch and McGill led Simonyi-Gindele to believe that Petrohunter was a "defunct" entity with no current oil and gas revenue, even though Veitch knew from his employment at Unit that Petrohunter had accumulated some oil and gas revenue. He was obligated to disclose this fact to Simonyi-Gindele and/or KT to ensure that Simonyi-Gindele could make an informed and voluntary decision as to the alleged abandonment of Petrohunter. Veitch also failed to disclose why he was seeking to purchase Petrohunter and, combined with Veitch's knowledge of Petrohunter's revenues, this shows that Veitch had an intent to mislead Simonyi-Gindele about his reasons for seeking to purchase Petrohunter. The Court finds that Simonyi-Gindele and/or KT could not have knowingly and voluntarily abandoned Petrohunter without disclosure of Veitch's knowledge that Petrohunter had begun to accumulate oil and gas revenues and, even without reference to unclaimed property laws, Veitch has not shown that Simonyi-Gindele and/or KT abandoned any interest they had in Petrohunter.

**B.**

Based on the Court's determination that Petrohunter was not abandoned by Simonyi-Gindele and/or KT, the Court must determine who does retain an ownership interest in Petrohunter and the oil and gas revenue owed to Petrohunter. Veitch's claim to ownership is based solely on his

argument that Simonyi-Gindele and/or KT abandoned Petrohunter. Simonyi-Gindele argues that ownership of Petrohunter reverted to KT after the bankruptcy proceedings were completed and that KT has not abandoned its ownership of Petrohunter.

Petrohunter filed for bankruptcy in 1985 and the bankruptcy trustee chose not to liquidate Petrohunter's oil and gas interests. Dkt. # 120-1, at 5. The bankruptcy case was closed in 1993 and the oil and gas interests at issue in this case may have been abandoned by operation of law. Property that is abandoned by the trustee "reverts to the debtor and stands as if no bankruptcy petition was filed." In re Dewsnup, 908 F.2d 588, 590 (10th Cir. 1990). The parties do not dispute that KT owned all of Petrohunter's stock before the bankruptcy petition was filed, and upon the closing of the bankruptcy proceedings KT remained the sole owner of Petrohunter. Petrohunter's corporate charter was revoked while the bankruptcy case was pending, and much of the parties' dispute concerns whether Petrohunter was abandoned due to the inaction of KT or Simonyi-Gindele following the closing of the bankruptcy case. Veitch argues that he claimed Petrohunter based on abandonment, because KT and/or Simonyi-Gindele distanced themselves from Petrohunter after the bankruptcy proceedings and because there may have been affirmative abandonment by Simonyi-Gindele. However, the Court has determined that ownership interest in a business is subject to the unclaimed property laws of Nevada or Oklahoma, and this type of property is not subject to the principles of common law abandonment in either state. Even if KT or Simonyi-Gindele were not asserting ownership of Petrohunter, Veitch could not simply declare himself the owner of Petrohunter. Any ownership interest of Petrohunter was required to be turned over to the state of Nevada under that state's unclaimed property laws. Veitch did not file a report with the State Treasurer of Nevada and Nevada does not currently have possession of the ownership interest of

16

Petrohunter. KT has received a certificate of revival from the Registrar of Corporations in Alberta, Canada, and KT is a going concern that is capable of asserting its ownership interest in Petrohunter. Dkt. # 126-3. There is evidence that Veitch attempted to purchase KT's interest in Petrohunter, but the evidence clearly shows that Simonyi-Gindele did not sell his ownership interest in Petrohunter to Veitch. Instead, Veitch was unable to purchase Petrohunter from KT and/or Simonyi-Gindele, and he attempted to assert ownership over Petrohunter under the common law principle of abandonment. Under the circumstances, the only party with a clear right to the ownership of Petrohunter is KT, because KT owned Petrohunter prior to the filing of the bankruptcy petition and KT has not sold its interest to any other person or entity.

The Court finds that KT is the owner of Petrohunter.[5] The Court also notes that Simonyi-Gindele has presented evidence that Veitch recovered oil and gas proceeds from the Treasurer of the State of Oklahoma on behalf of Petrohunter, but those oil and gas proceeds should have been paid to KT or its owner, Simonyi-Gindele. Veitch is obligated to return those funds to Simonyi-Gindele and/or KT. The parties shall submit a status report concerning any issues that remain to be adjudicated and the status of the funds received from the State of Oklahoma. If necessary, the parties shall also advise the Court of any issues that should be resolved by the bankruptcy court before any funds are distributed to KT.

---

[5] The Court is determining the ownership of Petrohunter based on the evidence presented by the parties, but the Court is not attempting to resolve any bankruptcy issues. Counsel for Unit has suggested that the motion to reopen the bankruptcy proceedings was denied without prejudice, and that the bankruptcy estate could have an interest in the funds deposited with the Court Clerk. Dkt. # 78, at 33.

**IT IS THEREFORE ORDERED** that the Motion of William A. Veitch for Summary Judgment on the Issue of Ownership of Petrohunter Energy, Inc. and Related Properties and Brief in Support (Dkt. # 119) is **denied**; KT Capital and Steven Simonyi-Gindele's Joint Motion and Brief for Partial Summary Judgment Adjudication Regarding Ownership of Petrohunter Energy, Inc. (Dkt. # 120) is **granted** insofar as the Court finds that KT Capital Corp. is the owner of Petrohunter.

**IT IS FURTHER ORDERED** that, no later than **January 22, 2015**, the parties shall file a status report as to what, if any, issues remain for adjudication by this Court after entry of this Opinion and Order, what bankruptcy issues would preclude the immediate distribution of funds to KT, and the status of the funds received by Veitch from the Treasurer of Oklahoma.

**DATED** this 7th day of January, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE