# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| UNIT PETROLEUM COMPANY, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 14-CV-0105-CVE-TLW |
| WILLIAM A. VEITCH, KT CAPITAL CORP f/k/a PETROHUNTER ENERGY, LTD., ASHLEY TUMLESON, previously named as Ashley Tumelson, STEVEN SIMONYI-GINDELE, and PETROHUNTER ENERGY, INC. | ) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court is Unit Petroleum Company's Motion for an Award of Attorneys Fees and Expenses (Dkt. # 150). Unit Petroleum Company (Unit) filed this interpleader action, because it was in possession of oil and gas revenue belong to Petrohunter Energy, Inc. (Petrohunter) and Unit had received conflicting information about the ownership of Petrohunter. The Court determined that KT Capital Corp. (KT) was the owner of Petrohunter and that KT was entitled to the interpled funds. Dkt. # 128. Unit seeks an award of attorney fees from the interpled funds and a separate award of attorney fees against defendant William A. Veitch and the interpled funds for his unreasonable litigation conduct. Dkt. # 150. Veitch and KT oppose Unit's motion for attorney fees. Dkt. ## 153, 154.

## I.

On March 7, 2014, Unit filed this interpleader action alleging that it had received competing claims to oil and gas revenue held for the benefit of Petrohunter, and Unit sought to deposit

approximately $277,000 with the Court. Dkt. # 2. Unit identified Vietch, Ashley Tumleson, Steven Simonyi-Gindele, and KT as potential claimants. Veitch and Tumleson claimed ownership of Petrohunter "though some theory of abandonment and/or adverse possession," and they had made a demand for funds owed to Petrohunter. Dkt. # 2, at 3. However, Unit had identified Simonyi-Gindele and/or KT as the owners of Petrohunter before Petrohunter initiated bankruptcy proceedings in 1985. Id.

Veitch filed an answer, crossclaims against KT and Simonyi-Gindele, and a counterclaim against Unit. Dkt. ## 17, 24, 25. Veitch alleged that he "revived" Petrohunter following KT and/or Simony-Gindele's abandonment of Petrohunter following bankruptcy proceedings that began in 1985. He also claimed that Unit had not deposited the full amount owed to Petrohunter, because Unit was required to pay interest at the rate of 12 percent per annum on the interpled funds. Veitch also filed a motion to intervene on behalf of Petrohunter, and he claimed that Petrohunter was an existing entity under his control that should be a party in this case. Dkt. # 19. Simonyi-Gindele and KT claimed that KT and Petrohunter were both existing entities and that Petrohunter was the wholly owned subsidiary of KT. Dkt. # 36, at 3. Unit filed a motion to dismiss the counterclaim filed by Veitch, asserting that Veitch failed to comply with the heightened pleading requirements of Fed. R. Civ. P. 23.1. Dkt. # 43. Unit also filed a motion to dismiss as to Veitch and Petrohunter's demand for interest on the interpled fund. Dkt. # 44. KT and Simony-Gindele filed a motion to dismiss Veitch's cross-claims against them, and they disputed Veitch's claim that he had acquired ownership of Petrohunter by abandonment. Dkt. # 54. Veitch was also attempting to obtain discovery from Unit, and Unit asked the Court to stay discovery pending a final ruling as to the ownership of Petrohunter. Dkt. # 56.

The Court held a status conference on May 8, 2014, and the Court noted that efficiency in resolving the parties' disputes was a key consideration. Although there was over $277,000 of interpled funds, the parties would likely spend a substantial amount on attorney fees if they continued to engage in extensive motion practice and discovery. Dkt. # 78, at 5-6. Counsel for Unit, Chad Kutmas, explained the events that led up to the filing of the interpleader action. Petrohunter filed for bankruptcy in 1985 and the bankruptcy proceedings lasted until 1992, and very little revenue on Petrohunter's oil and gas interests accrued until 2006. Id. at 7-9. Unit argued that it should not be required to pay interest at the penalty rate of 12 percent per annum, because there was an issue as to the ownership of Petrohunter that prevented Unit from paying the funds to Petrohunter. Id. at 9. Unit did not dispute that it would pay interest at a rate of 6 percent per annum if the operating agreements or pooling orders did not contain a waiver of statutory interest. Id. Unit agreed to investigate and voluntarily disclose whether there was any evidence that statutory interest had been waived. Id. at 11. The Court advised Unit that it would be discharged from the case once it could be determined that Unit had deposited the highest possible amount that could be owed to the successful claimant. Id. at 12. Unit advised the Court that Veitch was a former employee of Unit, who had been tasked with identifying and locating the owner of Petrohunter so that Unit could pay the proper party. Id. at 15. The Court proposed that the parties could initially conduct discovery as to the amount of funds that should be deposited with the Court to expedite Unit's discharge from the case, but the Court encouraged the parties to avoid expensive discovery and exchange information by way of voluntary disclosure whenever possible. Id. at 20-21. The Court granted in part and denied in part Unit's motions to dismiss. The motions were granted as to claims against Unit for immediate payment of the funds, but the motions were denied to the extent that the parties

disputed whether Unit had deposited with the Court the full amount owed to Petrohunter. Id. at 25. The Court permitted the defendants to assert crossclaims against each other as to payment of the interpled funds, but the Court found that any tort claims alleged by the parties exceeded the Court's jurisdiction in an interpleader action. Id. at 26.

Unit filed a report (Dkt. # 82) with the evidence that it had discovered concerning Petrohunter's right to statutory interest, and Unit submitted copies of division orders stating that interest would be waived in the event there was a defect of marketable title. Veitch filed a motion to amend to assert additional defenses against Unit, because he believed that Unit did not act in good faith by delaying payment of the disputed funds to Petrohunter. Dkt. # 84. Although Unit opposed the motion, the Court granted Veitch's motion to amend. Dkt. # 101. The parties attended a settlement conference, and Unit reached a settlement with KT as to the amount of funds that should be deposited with the Court. Dkt. # 112. However, there was no agreement among the parties as to who owned Petrohunter, and the Court ordered the defendants to file cross-motions for summary judgment on this issue. Dkt. # 115. The Court found that KT was the owner of Petrohunter and rejected Veitch's claim that he acquired ownership of Petrohunter by abandonment, and the Court set the case for a status conference to determine if there were any issues remaining for adjudication. Dkt. ## 128, 132. Unit requested leave to deposit additional funds with the Court as part of its settlement with KT, and the Court directed the parties to submit an agreed order discharging Unit from further liability upon deposit of the additional funds. Dkt. # 139. Unit advised the Court that it would seek attorney fees from the interpled funds, and the Court determined that Unit's motion for attorney fees from the interpled funds should be resolved before the entry of a final judgment. Id.

On April 8, 2015, the Court entered an order (Dkt. # 147) discharging Unit from any further liability with regard to the interpled funds and enjoining any party from making additional claims against Unit for the interpled funds. However, it was not an agreed order because KT objected to the proposed order submitted by Unit and Veitch. See Dkt. # 143. In particular, KT asked the Court to require that the interpled funds be paid immediately to KT, even though Veitch has stated that he will appeal the Court's ruling in favor of KT. The Court found that KT's proposal would subject Unit to a significant risk of multiple liability if the Court's ruling were reversed on appeal. Dkt. # 146, at 3. The Court directed Unit to submit its motion for attorney fees prior to entry of final judgment. Dkt. # 147, at 5. Unit has filed its motion for attorney fees, and Veitch and KT object to the award of any attorney fees to Unit.

## II.

Unit asks the Court to award it substantially all attorney fees that it incurred in prosecuting this interpleader action, except for fees associated with attempting to reopen Petrohunter's bankruptcy proceedings and the filing of its motion for attorney fees. Dkt. # 150, at 18 n.2. Counsel for Unit claim that they exercised "substantial billing discretion," and Unit asks the Court to award it attorney fees in the amount of $126,707.81 from the interpled funds. Id. at 18. Unit also seeks an award of attorney fees in the amount of $52,940.92 jointly and severally against Veitch and the interpled funds, because Veitch sought extensive discovery on matters unrelated to the interpled funds and he turned a "simple interpleader action into a full-blown litigation battle." Id. at 22.

## A.

The Court will initially consider Unit's request for attorney fees solely from the interpled funds for work related to filing and prosecuting the interpleader action. Unit argues that the

complexity of this interpleader action was atypical, and it seeks an award of attorney fees of $126,707.81 from the interpled funds. Veitch and KT oppose Unit's request on the ground that Unit has not satisfied any of the four factors that must be shown for an award of attorney fees in an interpleader action, and they argue that it was unnecessary for Unit to file an interpleader action.

The Tenth Circuit has found that district courts have the authority to award attorney fees from interpled funds if such an award would be equitable. United States Fidelity & Guar. Co. v. Sidwell, 525 F.2d 472, 475 (10th Cir. 1975). The Eleventh Circuit has provided the following rationale for awarding attorney fees to a disinterested stakeholder in an interpleader action:

> Attorneys' fees are justified in many interpleader actions for several reasons. First, an interpleader action often yields a cost-efficient resolution of a dispute in a single forum, rather than multiplicitous, piecemeal litigation. Second, the stakeholder in the asset often comes by the asset innocently and in no way provokes the dispute among the claimants. Third, fees for the stakeholder typically are quite minor and therefore do not greatly diminish the value of the asset.

In re Mandalay Shores Co-op Housing Ass'n, Inc., 21 F.3d 380, 383 (11th Cir. 1994). An interpleader plaintiff seeking attorney fees is required to show that it "(1) is disinterested (i.e., does not itself claim entitlement to any of the interpleader fund); (2) concedes its liability in full; (3) deposits the disputed fund in court; and (4) seeks discharge." United Bank of Denver, Nat'l Ass'n v. Oxford Properties, Inc., 683 F. Supp. 755, 756 (D. Colo. 1988). Attorney fees in interpleader actions should be awarded to the extent that the plaintiff seeking leave to deposit funds with the Court was required to incur attorney fees to preserve the funds for the rightful claimant. Liberty Nat'l Bank & Trust Co. of Oklahoma City v. Acme Tool Division of Rucker Co., 540 F.2d 1375, 1382 (10th Cir. 1976). A district court may consider whether the claimants "improperly protracted the proceedings" when determining if an award of attorney fees is appropriate. New York Life Ins. & Annuity Corp. v. Cannatella, 550 F. App'x 211, 217 (5th Cir. Dec. 23, 2013).

The parties dispute whether Unit is a disinterested stakeholder that should be permitted to recover attorney fees. Veitch and KT argue that Unit made no attempt to deposit interest owed on the oil and gas revenue that it was holding for the benefit of Petrohunter. Dkt. # 154, at 13. They also argue that the filing of an interpleader action was unnecessary, and they claim that Unit should have given the funds to the Oklahoma Corporation Commission (OCC) under the Unclaimed Pooled Monies Act, OKLA. STAT. tit. 52, § 551 et seq. (UPMA), when Unit was unable to determine the proper recipient of the funds. Dkt. # 153, at 16. The Court finds that the arguments of Veitch and KT are irrelevant to a determination of whether Unit was a disinterested stakeholder. It is sufficient that Unit disclaimed any interest in the funds deposited with the Court, and it did not claim that it has any right to the interpled funds. See Combined Ins. Co. of America v. Glass, 2015 WL 996172 (D. Colo. 2015). Unit was reasonably attempting to avoid becoming entangled in a dispute with competing claimants to the same funds, and Unit was willing from the inception of the case to deposit the oil and gas revenue with the Court. See Transamerica Premier Ins. Co. v. Gateway, 1995 WL 675368 (10th Cir. Nov. 13, 1995).[1] The Court will separately consider whether Unit deposited the full amount owed to the disputing claimants, but neither Veitch nor KT has shown that Unit ever made a claim to the interpled funds and Unit is a disinterested stakeholder, even if there was a dispute as to the amount to be deposited.

The second factor is whether Unit "conceded its liability in full," and Veitch and KT contend that Unit should be denied attorney fees because it failed to include statutory interest as part of the funds deposited with the Court. Dkt. # 153, at 17; Dkt. # 154, at 9-10. Unit responds that the existence of a contested issue concerning the payment of statutory interest does not defeat its

---

[1]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

7

equitable claim for attorney fees, and it seeks an award of attorney fees for the time spent litigating this issue. Dkt. # 156, at 5-6. Unit claims that any attorney fees attributable to the interest issue could be deducted from the award of attorney fees, but the existence of a disputed legal issue should not by itself be a reason to deny all attorney fees to Unit. As part of this analysis, the Court will also consider whether Unit has satisfied the third factor, which is that Unit has actually deposited with the Court the full amount owed to the claimants.

To resolve this issue, it is necessary for the Court to review the procedural history of this case and determine if Unit has now conceded its liability in full. Unit filed this case requesting leave to deposit over $277,000 with the Court, because Unit had received competing claims to oil and gas revenue held for the benefit of Petrohunter. Dkt. # 2, at 2. Unit deposited the funds one week later. Dkt. # 15. Veitch asserted a counterclaim against Unit, inter alia, demanding the payment of interest on the revenue owed to Petrohunter. Dkt. # 24, at 5. The Court held a status conference and Unit acknowledged that the amount deposited with the Court did not include statutory interest. Dkt. # 78, at 7. Counsel for Unit, Kutmas, explained that minimal oil and gas revenue accrued before 2001 or 2002 and very little interest would have accumulated before that date. Id. at 8. More substantial revenues accrued beginning in 2006 but Unit believed that there was a "title issue from the bankruptcy all the way through with the dispute over the ownership." Id. at 9. Unit claimed that it did not pay interest at a reduced rate of 6 percent per annum, because it was still researching whether Petrohunter had waived its right to recover statutory interest. Id. The Court permitted the parties to conduct discovery with Unit as to the full amount owed to Petrohunter, and Unit was advised that it could be discharged from the case once it was determined that the full amount had been deposited with the Court. Id. at 18-19. The Court stayed discovery as to the issue of

ownership of Petrohunter, because the initial stage of the interpleader action was focused on depositing funds with the Court and discharging the disinterested stakeholder from the litigation. Id. at 23-24. Unit filed a report stating Petrohunter expressly waived the right to statutory interest if there was a dispute as to marketable title. Dkt. # 82, at 2. On June 19, 2015, Veitch filed a motion to compel discovery on the issue of statutory interest and other matters. Dkt. # 87. The parties never asked the Court for a ruling on the proper amount to be deposited by Unit but, instead, Unit and KT reached a settlement as to the amount that would be paid to KT if it prevailed against Veitch. Dkt. # 115. The parties asked the Court to resolve the issue of the ownership of Petrohunter before making a finding that Unit may be required to deposit additional funds, and the Court set a briefing schedule. Id. The Court found that KT is the owner of Petrohunter and that KT should receive the interpled funds. Dkt. # 128. The Court entered an order allowing Unit to deposit additional funds as part of its settlement with KT, but there was no representation by Unit or KT that the additional funds constituted the payment of interest and the parties did not ask the Court for a final ruling as to any interest owed by Unit.

While it is clear that Unit disputed that it owed interest, neither KT nor Veitch has made any showing that Unit has deposited less than the full amount owed to the rightful claimant. Unit claimed that it did not owe interest on the oil and gas revenue and the parties did not ask the Court to make a conclusive ruling on this issue. Unit and KT reached a settlement and Unit deposited additional funds with the Court, and between Unit and KT there is an agreement that Unit has no obligation to deposit additional funds for interest or any past-due oil and gas revenue.[2] The mere

---

[2] Unit has agreed to deposit with the Court and oil and gas revenue that accrues in the future for Petrohunter, but the notice filed by Unit and KT states that the amount deposited with the Court represents payment in full by Unit through December 31, 2015. Dkt. # 149, at 1 n.3.

fact that Unit disputed that it owed statutory interest does not show that Unit failed to concede its full liability, especially considering that it produced evidence establishing that it had a good faith basis to believe that Petrohunter waived the payment of statutory interest. Dkt. # 82. The Court finds that Unit has conceded its liability in full and it has deposited that amount with the Court, and Unit has satisfied the second and third factors for an award of attorney fees.

The final factor is whether Unit sought to be discharged from this case upon deposit of the funds. Unit filed a motion for discharge and permanent injunction (Dkt. ## 57, 58) shortly after the case was filed. Veitch and KT resisted Unit's attempt to be discharged from the case, and Veitch in particular sought substantial discovery from Unit. On January 29, 2015, the Court granted Unit's motion for discharge and permanent injunction, and the Court has entered an order (Dkt. # 147) enjoining all parties from bringing any additional claims against Unit for the interpled funds. Although the parties did not completely agree on the terms of Unit's discharge, none of the defendants argued that Unit should not be discharged upon deposit of the supplemental interpled funds. Unit timely sought to be discharged from the case and it did not take any actions for the purpose of prolonging its involvement in this interpleader action, and the Court finds that Unit has established all four factors necessary for an award of attorney fees in an intepleader action.

Veitch and KT argue that Unit should not be permitted to recover attorney fees for filing this interpleader action, because they believe it was unnecessary for Unit to file an interpleader action. Dkt. # 153, at 19-20; Dkt. # 154, at 11-12. They claim that Unit should have complied with the UPMA and the Uniform Unclaimed Property Act, OKLA. STAT. tit. 60, § 651 et seq. (UPA), and that Unit should have given the unclaimed oil and gas revenue to the OCC, instead of filing an

interpleader action.[3]  Veitch and KT also argue that Unit unreasonably delayed in filing the interpleader action and that Unit should have sought to determine the ownership of Petrohunter long before this case was filed.  Dkt. # 153, at 17-19; Dkt. # 154, at 15.  These arguments have nothing to do with whether Unit should be awarded some amount of attorney fees, and the Court declines to relitigate the merits of the underlying interpleader action in ruling on Unit's motion for attorney fees.  See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("A request for attorney fees should not result in a second major litigation"); Lillbask ex rel. Mauclaire v. Connecticut Dep't of Educ., 2006 WL 752872 (D. Conn. 2006) ("The Court will not, on this motion for attorney's fees and costs, relitigate the merits of the case").  In any event, neither Veitch nor KT sought dismissal of the interpleader action in a timely manner and Veitch and KT may not challenge Unit's decision to file an interpleader action now that the case is completed.  Unit has established that it is a disinterested stakeholder and that it conceded its liability in full, and the Court finds that Unit filed this case because of a legitimate dispute as to who was the proper recipient of oil and gas revenue owed to Petrohunter.  Unit is entitled to recover a reasonable attorney fee from the interpled funds for having to file this case and for any steps it took to preserve the interpled funds for the benefit of the rightful claimant.

**B.**

Unit also seeks to collect over $52,000 in attorney fees jointly and severally from Veitch and the interpled funds, because Unit claims that Veitch's actions required Unit to incur substantial

---

[3] Unit notes that it is unlikely that KT would ever have found out about the oil and gas revenue held for Petrohunter if the money had been given to the OCC, because without the filing an interpleader action KT would never have received notice that there were substantial amounts owed to Petrohunter and Veitch would simply have sought to claim the funds from the OCC.  Dkt. # 156, at 2 n.2.

attorney fees without advancing the litigation for the benefit of all claimants. Dkt. # 150, at 19-22. Unit states that KT "will have a contribution claim against Veitch for his unnecessary actions in this interpleader action, which essentially spent [KT's] money as a losing claimant." Id. at 10. Veitch responds that his legal arguments were based on established law and the discovery he sought was proper, and he asks the Court to deny Unit's request for an award of attorney fees jointly and severally from Veitch and the interpled funds.

The Court initially notes that Unit has provided no authority for its assertion that KT will have a right of contribution against Veitch if the Court awards Unit attorney fees from the interpled funds due to Veitch's alleged bad faith litigation conduct. The Court has independently researched the issue and has found no legal authority that would allow one claimant in an interpleader action to recover "contribution" from another claimant for attorney fees paid out of a common fund. Under OKLA. STAT. 12, § 832, a right of contribution exists in favor of a joint tortfeasor who has paid more than his or her pro-rata share of a common liability in tort, but Veitch and KT are not joint tortfeasors and KT would have no right of statutory contribution. Oklahoma courts recognize a claim for equitable contribution in limited situations in which a co-obligor or co-insurer shares common liability for the same loss, but Veitch and KT are competing claimants to a common fund, not co-obligors or co-insurers, and KT would have no right to equitable contribution from Veitch. U.S. Fidelity & Guar. Co. v. Federated Rural Elec. Ins. Corp., 37 P.3d 828, 832 (Okla. 2001). The Court declines to award attorney fees to Unit from the interpled funds for work done solely due to Veitch's litigation conduct, because this would essentially punish KT for Veitch's conduct and KT would have no recourse against Veitch any reduction to the amount of the interpled funds.

Unit argues that Veitch should be individually liable for attorney fees incurred by Unit due solely to his unreasonable litigation conduct. The Court finds that this matter is the type of attorney fee issue that is typically resolved in a post-judgment motion for attorney fees under Fed. R. Civ. P. 54(d), and an award of such fees would not affect the amount of funds recovered by the prevailing claimant in this interpleader action. In the interest of expediting this litigation, the Court declines to rule on Unit's request for attorney fees against Veitch individually, but Unit may renew this request in a post-judgment motion.

## III.

The Court has determined that Unit should be awarded some of its attorney fees incurred in the interpleader action, but the Court must decide what services were reasonably necessary for Unit to preserve the deposited funds for the prevailing party. Veitch and KT offer little argument as to the reasonableness of the fees requested by Unit, and their arguments are focused on whether Unit has established that it is entitled to any attorney fees. The Court has independently reviewed all of the billing records submitted by Unit and finds that many of the attorney fees sought by Unit cannot reasonably be categorized as costs associated with filing the interpleader action or with preserving the interpled funds for the benefit of the rightful claimant. The Court notes that this was an unusually complex interpleader action and that Unit should be awarded attorney fees that are somewhat higher than fees typically awarded to an interpleader plaintiff. However, the amount of attorney fees requested by Unit is excessive, and the Court finds that Unit should be awarded attorney fees substantially less than the amount sought in Unit's motion.

The Court will employ the lodestar method to determine the amount of fees that should be paid to Unit out of the interpled funds. See Garrett v. Bullock, 2015 WL 4132047 (D. Nev. July 8,

2015). "The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998). The party seeking attorney fees bears the burden of establishing that the fees sought are reasonable, and "courts must endeavor to exclude from the calculation any hours that are 'excessive, redundant, or otherwise unnecessary." Bishop v. Smith, ___ F.3d ___, 2015 WL 4086356 (N.D. Okla. May 1, 2015) (quoting Hensley, 461 U.S. at 434). When calculating the amount of attorney fees that may be recover by Unit, the Court takes into account that attorney fees in an interpleader action are "typically modest" and "there is an important policy in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir. 2000).

Unit requests over $8,000 in attorney fees for simply filing the interpleader action. The stakeholder in an interpleader action is typically awarded attorney fees to compensate it for the filing of the interpleader action, but these fees are also typically significantly less than the amount requested by Unit. See New York Life Ins. & Annuity Corp., 550 F. App'x at 217 (awarding $750 in attorney fees to interpleader plaintiff); Melton v. White, 848 F. Supp. 1513 (W.D. Okla. 1994) (awarding insurer $1,777.83 in attorney fees); Lincoln Income Life Ins. Co. v. Harrison, 71 F.R.D. 27 (W.D. Okla. 1976) (awarding "reasonable" attorney fee of $800 to stakeholder). The billing records of plaintiff's counsel show that three separate attorneys worked on the case, but Kutmas was primarily responsible for contacting the client and drafting pleadings. This is consistent with the Court's observations at hearings and it appeared to the Court that Kutmas was lead counsel for Unit. Kutmas is an experienced attorney and his billing rate of $225 is reasonable in the Tulsa

marketplace. The Court has reviewed the billing records and finds that Kutmas billed 17.9 hours that are reasonably related to drafting an interpleader complaint and depositing funds with the Court. These services were essential and it is reasonable for these costs to paid out of the interpled funds. However, many of the billing entries are made by Gary McDonald, and he charged Unit $300 per hour for his services. In this case, his services primarily consisted of conferring with Kutmas and reviewing Kutmas' work. Unit may have asked McDonald to review Kutmas' work and confer with Kutmas about the case, but it is not reasonable in an interpleader action to charge the claimants for attorney fees for multiple attorneys to perform the same or similar services. The billing records also show that associate attorneys worked on the case and conducted research at Kutmas' request, but Kutmas also billed Unit for his time spent conducting legal research and the Court will not require the interpleader claimants to pay for duplicative services. The Court finds that the claimants should be required to pay for 17.9 hours of work performed by Kutmas related to the filing of the interpleader action and the depositing of funds with the Court and, at an hourly rate of $225, this results in an attorney fee of $4,027.50 for this part of the case.

The Court finds that the Unit was required to appear at a status conference, respond to discovery requests by both claimants, and confer with opposing counsel about the interpleader action, and Unit should be permitted to recover some of these attorney fees from the interpled funds. The Court set this case for a status conference and Unit reasonably incurred attorney fees in preparing for the status conference. At the status conference, the Court advised the parties to engage in informal discovery to reduce costs, but both parties requested formal discovery from Unit. Unit should be able to recover attorney fees for some amount of its attorney fees for responding to these discovery requests, because Unit was willing to proceed with informal discovery and all claimants

15

required Unit to engage in expensive formal discovery. However, the Court will not award Unit attorney fees for attorney time spent resisting discovery on the amount of interest owed on oil and gas revenue owed to Petrohunter, because there was a legitimate dispute about the amount Unit was required to deposit with the Court. The Court also declines to award Unit attorney fees related to its settlement discussions and attendance at a settlement conference, because it is reasonable to assume that Unit used the settlement talks to limit its liability to the prevailing claimant. The parties' filings show that Unit was at least partially responsible for any dispute concerning the full amount of its liability to Petrohunter, and Unit cannot reasonably be viewed as working to preserve the interpled funds when it accrued attorney fees to reach a more favorable settlement for itself. The Court again limits the payment of attorney fees to services provided by Kutmas, because Kutmas was primarily responsible for contacting the client and opposing counsel, and the claimants should not be required to reimburse Unit for time during which multiple attorneys for Unit conferred about the case. After reviewing the billing records, the Court finds that Unit's counsel spent 34.5 hours working on matters for which it could reasonably expect to be compensated in an interpleader action, particularly with regard to the status conference and discovery matters that benefitted all claimants. This results in an award of $7,762.50 in attorney fees for the period of time between the May 8, 2014 status conference and the Court's ruling on the claimants' motions for summary judgment.

Finally, the Court finds that Unit should be awarded some of its attorney fees incurred after the Court determined that KT was the owner of Petrohunter, because the Court directed Unit to appear at a status conference and take the lead in preparing a proposed order discharging Unit from the case. Unit incurred additional attorney fees when counsel for KT sought to impose a condition

in the order of discharge and final judgment that KT should immediately be paid the interpled funds, even though KT knows that Veitch intends to appeal this Court's ruling in favor of KT.  This is an instance in which the conduct of the prevailing claimant, KT, directly required Unit to incur additional attorney fees on a matters beyond the scope of Unit's role as a disinterested stakeholder, and it is equitable to require that the interpled funds be used to pay for these expenses.  The Court has reviewed the billing records and has identified 24.9 hours of work by Kutmas on these matters, and this results in an award of fees of $5,602.50 to Unit for its attorneys' work following the Court's ruling on the ownership of Petrohunter.

In total, the Court finds that Unit should be awarded $17,392.50 in attorney fees from the interpled funds to compensate Unit for its efforts to file the interpleader action and preserve funds for the rightful claimant.  This is somewhat higher than is typical in an interpleader action, but the award of attorney fees is necessary in light of the claimants' actions that required Unit to incur substantial attorney fees.

**IT IS THEREFORE ORDERED** that Unit Petroleum Company's Motion for an Award of Attorneys Fees and Expenses (Dkt. # 150) is **granted in part** and **denied in part**: Unit's request for attorney fees is granted but the Court declines to award the full amount of attorney fees requested by Unit.

**IT IS FURTHER ORDERED** that Unit shall be awarded $17,392.50 in attorney fees from the interpled funds when those funds are ready for distribution to the prevailing claimant.

**IT IS FURTHER ORDERED** that the parties shall submit an agreed judgment no later than **October 21, 2015**.

**DATED** this 5th day of October, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

17